# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID COLLINS, an individual,<br><br>                                   Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC., a Delaware Corporation,<br><br>                                   Defendant. | Case No.:  3:23-cv-01368-RBM-DEB<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. 90];**<br><br>**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. 99];**<br><br>**(3) DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [Doc. 87]** |

Pending before the Court are Plaintiff David Collins' ("Plaintiff") Motion for Summary Judgment ("Plaintiff's MSJ") (Doc. 90) and Defendant Wal-Mart Stores, Inc.'s ("Defendant" or "Wal-Mart") Motion for Summary Judgment ("Defendant's MSJ") (Doc. 99).  The Court finds the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  Having reviewed the cross motions for summary judgment and the briefs in opposition and reply, and for the reasons set forth below, the Court **DENIES** Plaintiff's MSJ and **GRANTS** Defendant's MSJ.

1

## I.    BACKGROUND

**A.    Factual Background[1]**

Plaintiff is a 58-year-old man who has worked for Defendant for over 20 years and is currently employed at one of Defendant's stores in Escondido, California.  (Doc. 85 ¶ 4; Doc. 101 [Joint Statement of Facts in Support of Defendant Walmart Inc.'s Renewed Motion for Summary Judgment] ("JSF") at 3–4.)[2]    Since he began working at the Escondido store in 2016, he has maintained the same positions: Cap Team 1 Associate and Stocking Team 1 Associate.  (JSF at 3 (citing Doc. 99-6 [Deposition of Plaintiff] at 6:8–14).)

Plaintiff's experience as a stocking team associate at the Escondido store has not been a positive one.  After transferring there in 2016, he received a pay cut for several weeks, though from 2017 on he received a pay increase every year.  (JSF at 4; Doc. 99-6 [Deposition of Plaintiff] at 12:5–25; 20:2–6.)  Plaintiff initially expressed to leadership his desire to become a store manager (*see* Doc. 85 ¶ 19), but he did not apply for a management position within Wal-Mart since February 6, 2020 because he felt like Wal-Mart would not consider his application.  (JSF at 3–4 (citing Doc. 99-4 [Plaintiff's Supplemental Responses to Defendant's Request for Admissions] at 3–4); Doc. 99-6 [Deposition of Plaintiff] at 25:9–25).)  Plaintiff also struggled with his supervisors and coworkers, and maintained handwritten notes throughout his employment documenting his perceived abuse and bullying at their hands. (*See generally* Doc. 86 at 13–38.)

In response to these challenges in the workplace, Plaintiff complained internally to Wal-Mart Ethics and through the Wal-Mart Open Door Policy, and externally to the

---

[1]  The Court sets forth these facts, where it can, based on the parties' Joint Statement of Facts in Support of Defendant Walmart Inc.'s Renewed Motion for Summary Judgment. (Doc. 101).  The Court also cites some of the allegations in Plaintiff's First Amended Complaint ("FAC") (Doc. 85) for additional context, but does not rely on these allegations for purposes of this Order to the extent they are not supported by evidence in the record.

[2]  The Court references the CM/ECF pagination unless otherwise noted.

3:23-cv-01368-RBM-DEB

Department of Fair Employment and Housing, now called the Civil Rights Department ("CRD").  (Doc. 85 ¶ 24; JSF at 9 (citing Doc. 99-6 [Deposition of Plaintiff] at 13:3–15).) It is undisputed that Plaintiff filed complaints through the Open Door Policy before March 12, 2021 and with the CRD on March 12, 2021.  (*See* JSF at 9; Doc. 99-1 at 17–18). Plaintiff also represents that he called Wal-Mart Ethics to complain once more on July 9, 2024.  (JSF at 9, 15; *see* Doc. 86 at 24; Doc. 104 at 4–6.)

After filing his complaints through the Open Door Policy and the CRD, in October 2022, Plaintiff took an unpaid, unprotected leave of absence for work-related stress.  (JSF at 5 (citing Doc. 99-6 [Deposition of Plaintiff] at 16:2–17:6, 19:1–18).)  When he returned from leave about four months later, he had the same job title, job description, pay, and management.  (Doc. 99-6 [Deposition of Plaintiff] at 18:12–21:21.)  He was also, however, reassigned from "hardline" capping to "softline" capping, which required him to work with different coworkers and move to the backroom of the store.  (*Id.* at 22:4–15.)  In his deposition, Plaintiff stated that he viewed this reassignment "very much as a punishment," and that people being moved from hardline capping to softline capping was "extremely rare[]," happening "maybe twice a year, if that."  (*Id.* at 22:4–15; 27:5–16.)

**B.    Plaintiff's Claims**

In the First Amended Complaint ("FAC"), Plaintiff asserts four causes of action against Defendant under the Fair Employment and Housing Act ("FEHA") and the California Labor Code: (1) discrimination based on age in violation of Government Code section 12940(a); (2) harassment in violation of Government Code section 12940(j); (3) retaliation in violation of Labor Code sections 98.6 and 1102.5 and Government Code section 12940(h); and (4) failure to prevent discrimination, harassment, and retaliation in violation of Government Code section 12940 *et seq.* and Labor Code section 1102.5. (Doc. 85 ¶¶ 26–57.)

**C.    Procedural History**

On June 16, 2023, Plaintiff filed suit against Defendant in California state court. (Doc. 1-2 at 5–17.)  On July 27, 2023, Defendant removed the case to this Court.  (Doc. 1.)

3:23-cv-01368-RBM-DEB

On August 2, 2023, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 3.) On January 4, 2024, the Court issued its Order granting in part and denying in part Defendant's Motion to Dismiss ("MTD Order"). (Doc. 7.) In the MTD Order, the Court found that Plaintiff's FEHA claims based on events before March 12, 2021 were barred by the statute of limitations and that the continuing violations doctrine was not applicable, but that Plaintiff's FEHA claims based on discrete acts occurring after March 12, 2021 were not time-barred. (*See* Doc. 7 at 10–14.) Over eight months later, Plaintiff filed several motions that the Court construed as a Motion for Reconsideration of the MTD Order. (Docs. 40, 42–46.) On May 19, 2025, the Court denied Plaintiff's Motion for Reconsideration. (Doc. 80.)[3]

On June 6, 2025, the Court granted what it construed as Plaintiff's Motion to Amend (*see* Docs. 52–57, 59) and ordered Plaintiff to file his FAC on or before June 16, 2025. (Doc. 84 at 9.) Plaintiff timely filed his FAC (Doc. 85), along with a document titled Support of Amended Original Complaint. (Doc. 86.)

On June 30, 2025, Defendant filed a Motion to Dismiss Plaintiff's FAC. (Doc. 87.) On July 1, 2025, Plaintiff filed Plaintiff's MSJ. (Doc. 90). On July 29, 2025, Defendant filed its Opposition to Plaintiff's MSJ. (Doc. 93.) On August 25, 2025, Defendant filed Defendant's MSJ. (Doc. 99.) That same day, before Defendant filed its MSJ, Plaintiff filed a document titled "Plaintiffs Opposition of Defendants Motion for Summary Judgment and MSJ Prior to Motion Date Instead of Response then MSJ." (Doc. 98.) This filing is not a true opposition, but "a solid general outline of the Causes of Action." (*Id.* at

---

[3] Plaintiff has seemingly renewed his attempt to invoke the continuing violations doctrine and introduce evidence from before March 12, 2021. (*See* Doc. 98 at 2 ("There has been a time-barred judgment, but the evidence remains and the Plaintiff is using the Continuing Violations Doctrine."); Doc. 90 at 2 ("There are years-worth and a multitude of complaints to these Causes of Action prior to" March 12, 2021.).) Because it already dismissed FEHA claims based on events before March 12, 2021 and denied Plaintiff's Motion for Reconsideration, the Court does not discuss events that happened before March 12, 2021.

2.)  On September 22, 2025, Defendant filed its evidentiary objections (Doc. 102) and Reply to Plaintiff's Opposition of Defendant's Summary Judgment Motion.  (Doc. 103.)

On September 24, 2025, Plaintiff filed a "Brief Response to Defense 09/22/25 Pleading and Support to Opposition of MSJ."  (Doc. 104.)  This filing is technically Plaintiff's second opposition to Defendant's MSJ.  Defendant notes that "Plaintiff has not cited any case in which a party that filed an inadequate opposition to summary judgment has been granted a second bite of the apple . . . to submit additional argument or evidence that was available at the time of the original filing."  (Doc. 103 at 4 (quoting *Rashidian v. IRS*, No. SACV14-16-JLS (DFMx), 2015 WL 13343584, at *3 (C.D. Cal. Feb. 26, 2015) (cleaned up.)  However, given Plaintiff's *pro se* status, his apparently mistaken belief that he was required to file an opposition before Defendant had even filed its MSJ,[4] and the fact that Doc. 104 is Plaintiff's only filing that responds to the specific arguments raised in Defendant's MSJ, the Court construes it as part of Plaintiff's Opposition to Defendant's MSJ.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material when, under the governing substantive law, it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 242.

---

[4] Plaintiff writes "[t]he Motion cut-off was moved to be August 25, 2025.  On the afternoon of that day the Plaintiff had to file the opposition to MSJ as it was simply getting late and the Defense did not file until just before the deadline."  (Doc. 104 at 1.)  Thus, it appears Plaintiff believed that August 25, 2025 was not only the deadline for filing motions for summary judgment, but also for filing oppositions to motions for summary judgment. Under the circumstances, this was not a second bite of the apple; rather, Plaintiff's mistake or excusable neglect prevented him from taking a proper first bite.

3:23-cv-01368-RBM-DEB

The initial burden of establishing the absence of any genuine issue of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy this burden by (1) presenting evidence that negates an essential element of the non-moving party's case or (2) demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23.

Once the moving party has satisfied its initial burden, the non-moving party cannot rest on the mere allegations or denials of its pleading. Rather, she must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks and citation omitted). The non-moving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the record as a whole, in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221–22 (9th Cir. 1995). In determining whether there are any genuine issues of material fact, the Court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). When a party proceeds *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence" and where the *pro se* party "attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.    DISCUSSION

**A.    Plaintiff's MSJ (Doc. 90)**

Plaintiff's MSJ is four pages. (*See* Doc. 90 at 2–4.) Plaintiff states that his FAC cites "specific incidents of harassment, retaliation, bullying, and failure to protect from bullying by the Defendant using specific names and dates." (*Id.* at 2.) Plaintiff goes on to state that "with the Plaintiff's submission of these documents the burden of proof then

shifts to the Defense to counter them. . . . The Defense has failed to counter or deny these specific adverse actions. . . . The Plaintiff, therefore, asks the Court for a Summary Judgment." (*Id.* at 3.)

As the moving party, Plaintiff bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp*, 477 U.S. at 323. He has not met that burden because Plaintiff's MSJ identifies no evidence and contains only conclusory statements. "The [C]ourt declines to do [P]laintiff's work for him . . . [and] hunt through the record to locate [records] that support his assertions." *Dominguez v. Cnty. of Los Angeles*, Case No. CV 21-6369 FMO (KSx), 2023 WL 10406548, at *1 (C.D. Cal. Feb. 2, 2023); *see also Huey v. UPS, Inc.*, 165 F.3d 1084, 1085 (7th Cir. 1999) ("[J]udges need not paw over the files without assistance from the parties."); *Moriarty v. Am. Gen. Life Ins. Co.*, Case No.: 3:17-cv-1709-BTM-WVG, 2022 WL 4103080, at *3 (S.D. Cal. Sept. 7, 2022) (denying the plaintiff's motion for summary judgment where she submitted no evidence), *vacated and remanded on other grounds by* No. 23-3650, 2025 WL 687960 (9th Cir. Mar. 4, 2025). Plaintiff's MSJ (Doc. 90) is thus **DENIED**.

## B.     Defendant's Evidentiary Objections

Because the Court "can only consider admissible evidence in ruling on a motion for summary judgment," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citation omitted), a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, *but it may be presented in an admissible form at* trial, a court may still consider that evidence." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (emphasis in original) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)).

3:23-cv-01368-RBM-DEB

Defendant has filed an objection to (1) the "transcription of Plaintiff's handwritten notes;"[5] (2) Plaintiff's "First Draft of the Backroom for Walmart #5996 Escondido, CA;"[6] and (3) Plaintiff's Letter from Jewish Family Service Safe Parking Program.[7]  (Doc. 102 at 2–3.)  The Court discusses these objections below.

### 1.    Plaintiff's Letter and Draft of the Wal-Mart Backroom

Defendant objects to Plaintiff's letter on the grounds of insufficient foundation under Evidence Rule 901, relevance under Evidence Rule 401, prejudice under Evidence Rule 403, hearsay under Evidence Rule 801, and non-production during discovery under Federal Rules of Civil Procedure 26 and 37.  (Doc. 102 at 2–3.)  Defendant objects to Plaintiff's draft of the Wal-Mart backroom for insufficient foundation, relevance, and non-production during discovery.  (*Id.* at 2.)

The Court need not rule on Defendant's objections as to these two documents because they are "duplicative of the summary judgment standard itself. . . .  A court can award summary judgment only when there is no genuine dispute of *material* fact."  *Burch*, 433 F. Supp. 2d at 1119 (emphasis in original).  Even if the Court considered Plaintiff's letter—stating that he was experiencing homelessness from June 2023 through September 2023—or Plaintiff's draft of the Wal-Mart backroom—showing an unremarkable sketch of the room—it would not view these as creating disputes of *material* fact.  As Defendant correctly notes, these exhibits have no connection to "the respective elements of each claim."  (Doc. 103 at 6.)  As the *Burch* court advised in a similar context, "instead of challenging the admissibility of the evidence, lawyers should challenge its sufficiency."  *Burch*, 433 F. Supp. 2d at 1119.  Because Defendant successfully challenges the sufficiency of these two exhibits, the Court does not rule on Defendant's objections to them.

---

[5]  *See* Doc. 86 at 13–38; Doc. 98 at 14–20; Doc. 101 at 10–15.
[6]  Doc. 98 at 37–38.
[7]  Doc. 98 at 39–40.

3:23-cv-01368-RBM-DEB

## 2. Transcription of Plaintiff's Handwritten Notes

Defendant also objects to the transcription of Plaintiff's handwritten notes on the grounds of hearsay, violation of the best evidence rule, and insufficient foundation. (Doc. 102 at 2; Doc. 103 at 5–6.)  As discussed below, the Court overrules Defendant's hearsay and best evidence rule objections.  Although the Court could properly sustain Defendant's insufficient foundation objection, it will consider Plaintiff's handwritten notes anyway because they do not create a genuine dispute of material fact.

Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  Although inadmissible hearsay cannot be considered on a motion for summary judgment, *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980), "a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).  Assuming, without deciding, that Plaintiff's notes are hearsay, the Court may still consider them because Plaintiff could present them in an admissible form at trial by testifying.  Defendant's hearsay objection is thus overruled.

Under the best evidence rule, generally, "[a]n original writing . . . is required to prove its content unless [the Evidence Rules] or a federal statute provides otherwise."  Fed. R. Evid. 1002.  Even if Plaintiff's notes violate the best evidence rule, the Court may consider them on a motion for summary judgment because they could be presented in an admissible form at trial, such as by live testimony.  *See Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (holding that affidavit may be considered on summary judgment despite best evidence rule objection because the facts underlying the affidavit are of the type that would be admissible as evidence even though the affidavit itself might not be admissible).  Defendant's best evidence rule objection is thus overruled.

"Authentication is a condition precedent to admissibility, and this condition is satisfied by evidence sufficient to support a finding that the matter in question is what its

3:23-cv-01368-RBM-DEB

proponent claims." *Orr*, 285 F.3d at 773 (cleaned up). "[U]nauthenticated documents cannot be considered in a motion for summary judgment." *Id.* (citations omitted). "In a summary judgment motion, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* at 773–74 (cleaned up).

Defendant notes that Plaintiff has not properly authenticated the transcription of his notes. (Doc. 102 at 5.) This would be a ground to sustain Defendant's authentication objection. However, because the Court is mindful that the "Federal Rules of Evidence take a liberal approach in the admission of evidence," *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (citation omitted), and because Plaintiff's notes do not create a triable issue of fact, the Court will consider Plaintiff's notes (*see* Doc. 86 at 13–38; Doc. 98 at 14–20) in its analysis below. *See also Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1155 (S.D. Cal. 2022) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir. 1989)) ("[W]here a district court relies on an unauthenticated document that could be authenticated at trial by . . . a witness with competent personal knowledge . . . its reliance on that document is harmless error.").

It does not consider, though, any unsupported allegations in Plaintiff's pleadings. (*See, e.g.*, Doc. 85 ¶ 22 (unsupported allegations in FAC that manager stated Plaintiff "could not be a manager because he was 'too old,' 'goes to the bathroom too much,' and 'shakes too much'"); Doc. 86 at 1–12 (unsupported restatement of allegations in FAC).) Although the Court must consider as evidence a *pro se* party's contentions offered in pleadings where the *pro se* party "attested under penalty of perjury that the contents of the motions or pleadings are true and correct," *Blanas*, 393 F.2d at 923, Plaintiff's motions and pleadings are not verified. *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (noting that a pleading is verified if the drafter states under penalty of perjury that its contents are true and correct). For clarity moving forward, the Court considers as evidence: Doc. 86 at 13–38; Doc. 98 at 14–20; Docs. 99-2–99-10; and Doc. 104 at 2–3.

3:23-cv-01368-RBM-DEB

**C.      Defendant's MSJ (Doc. 99)**

      **1.      Age Discrimination Claim**

To state a *prima facie* case of age discrimination under FEHA, Plaintiff must show that he: "(1) is over the age of 40; (2) suffered an adverse employment action; (3) was performing satisfactorily at the time of the adverse action; and (4) suffered the adverse action under circumstances that give rise to an inference of unlawful discrimination[.]" *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 321 (2010) (citation omitted). The plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011). That burden is reversed, though, when a defendant moves for summary judgment. *Id.* To prevail on a motion for summary judgment, the employer must show, as relevant here, that the "plaintiff could not establish one of the elements of [the] FEHA claim[.]" *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1247 (2008).

Defendant argues that Plaintiff cannot establish that he suffered an adverse employment action. (Doc. 99-1 at 12–15.) First, Defendant argues that Plaintiff has no failure to promote claim because he did not apply for a management position within Wal-Mart during the relevant time period. (*Id.* at 12–13.) Second, Defendant argues that Plaintiff cannot show any other adverse employment action because: (1) he has maintained the same position since 2021; (2) he has received a raise every year; (3) he has no evidence "to support the claim that he was treated differently from younger employees on the basis of performance reviews;" and (4) his job required him to perform the tasks that he deemed less desirable. (*Id.* at 13–15.) Besides relying on his notes, Plaintiff argues that he has identified younger employees who were promoted instead of him. (Doc. 104 at 1.)

Adverse employment actions "materially affect the compensation, terms, conditions, or privileges of . . . employment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000). They can include "termination, demotion, failing to promote, denial of an available job, adverse job assignments, official discipline, and significant changes in compensation or benefits." *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 905

3:23-cv-01368-RBM-DEB

(E.D. Cal. 2017); *see also Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (taking "an expansive view" of what constitutes adverse employment actions).

"Mere ostracism" or minor conduct, however, do not constitute adverse employment actions. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1090 (9th Cir. 2008). As the California Supreme Court explained, "[m]inor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee . . . are not actionable" in a FEHA discrimination claim. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054–55 (2005).

At the outset, the Court notes that many of Plaintiff's complaints are the minor or trivial type that are not actionable under FEHA. (*See, e.g.*, Doc. 86. at 15 (supervisor asked Plaintiff "[i]sn't it a little early for lunch?"); *id.* at 17 (assistant managers accused Plaintiff of leaving out a cart from the freezer); *id.* at 18 (manager asked Plaintiff to clock in early); *id.* at 21 (assistant manager yelled at Plaintiff and several others who were getting carts); *id.* at 23 (assistant manager was "put off by having to come unlock the alcohol lock-up for [Plaintiff] to stock"); *id.* at 24 (assistant manager told Plaintiff "[y]ou need to call for help! You need to ask for paper towels! You need to tell the customer to watch out!" regarding a spill on the floor); *id.* at 25 (assistant manager admonished Plaintiff for not having his keys); *id.* at 26 (assistant manager called Plaintiff "Mr. Dave" and Plaintiff responded "[p]lease, don't call me Mr. Dave, it hurts me"); *id.* at 27 (new manager made the employees say "'good morning' back to him a little louder"); *id.* at 31 (assistant manager told Plaintiff to help unload a truck).) The Court thus turns to Plaintiff's claims that Defendant: (1) failed to promote him; (2) failed to provide him performance reviews and raises; and (3) gave him adverse job assignments.[8]

---

[8] Plaintiff alleges several other adverse employment actions. (*See, e.g.*, Doc. 85 ¶ 24 (Defendant denied Plaintiff's requests for paid time off; excessively monitored him; forced him to work in the rain; ignored his requests to fix his attendance record; and ignored his request to be certified to operate a forklift).) Even construing the record liberally in light of Plaintiff's *pro se* status, there is no evidence in the record to support these

3:23-cv-01368-RBM-DEB

### a)    Failure to Promote

Defendant argues that Plaintiff "is missing the prerequisite of actually seeking a management position with Walmart." (Doc. 99-1 at 13.)  Plaintiff concedes that he did not apply to any management positions within Wal-Mart during the relevant time period "because it would be doing the same thing expecting different results and the Plaintiff was being retaliated against at that point." (Doc. 104 at 4; Doc. 86 at 8.)

As the Ninth Circuit recently clarified, the "requirement [that a plaintiff apply for a position] makes sense in many cases," and several of its opinions "suggest[] that the plaintiff must apply for the position in question."[9] *Caldrone v. Circle K Stores Inc.*, 156 F.4th 952, 957 (9th Cir. 2025) (citing *Shelley v. Geren*, 66 F.3d 599, 608 (9th Cir. 2012) (requiring the plaintiff to show that he was "qualified for the position *for which an application was submitted*") (emphasis added); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (finding plaintiff showed *prima facie* case where he "was clearly within the protected class, *had applied for an available position* for which he was qualified, and was denied a promotion which was given to a younger person") (emphasis added)).  But a plaintiff need not "demonstrate that they submitted an application" where "an employer declines to solicit applications and does not announce that a position is available." *Caldrone*, 156 F.4th at 957.

Although certain circumstances, such as those contemplated in *Caldrone*, obviate the need for a plaintiff to show he applied for a position, those circumstances are not present here.  There is no evidence that Defendant was refusing to accept applications from, or hiding listings from, Plaintiff.  In fact, Plaintiff had applied to management positions within Wal-Mart before the time period relevant in this case (*see* Doc. 99-6 [Deposition of

---

unsubstantiated allegations.  Therefore, the Court discusses only the claimed failure to promote, failure to provide performance reviews and raises, and adverse job assignments.

[9]  Although *Caldrone* concerned an Age Discrimination in Employment Act claim, "[a] similar analysis applies to the FEHA claim." *Caldrone*, 156 F.4th at 956.

3:23-cv-01368-RBM-DEB

Plaintiff] at 25:9–21), and stopped applying only because he felt "it would be doing the same thing expecting different results." (Doc. 104 at 4; Doc. 86 at 8.) Because Plaintiff had the opportunity to apply for management positions and chose not to, this is one of the "many cases" where it still "makes sense" to require Plaintiff to show that he applied for the position in question. *Caldrone*, 156 F.4th at 957. Defendant has thus met its burden to show that there is no dispute of material fact as to, and that Plaintiff cannot succeed on his discrimination claim under, a failure to promote theory.

### b)  Performance Reviews and Raises

In the FAC, Plaintiff alleges that Defendant "has refused to provide [him] with any performance evaluations or meaningful raises that weren't required by law or part of its company-wide wage increase. Meanwhile, [Plaintiff] is informed and believes that his younger co-workers continued to receive their yearly reviews [and] raises." (Doc. 85 ¶ 23.) Defendant argues that Plaintiff has no evidence to support these claims. (Doc. 99-1 at 13–16.) "Plaintiff is unable to provide any examples of a younger employee in Plaintiff's same position who received a review . . . and he cannot identify other employees . . . who received raises because they did not discuss it with him." (*Id.* at 14.) The Court agrees that Plaintiff is unable to establish an adverse employment action here.

First, although "an undeserved negative performance review can constitute an adverse employment decision," *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000), the Ninth Circuit also recently held in an unpublished opinion that "[a] low performance review standing alone, without impact on the compensation, terms, conditions, or privileges of employment does not amount to an adverse employment action." *Spokoiny v. Univ. of Wash. Med. Ctr.*, No. 24-550, 2025 WL 752492, at *1 (9th Cir. Mar. 10, 2025); *see also Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002) (holding "that a performance evaluation that was mediocre (rather than 'sub-average') and *that did not give rise to any further negative employment action* did not violate Title VII") (discussing *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000) (emphasis added).

It follows that Plaintiff's lack of performance reviews, standing alone, cannot constitute an adverse employment action without an impact on Plaintiff's conditions of employment. There is no evidence of such an adverse impact here. Despite the lack of performance reviews, Plaintiff has maintained the same position and received a raise every year during the relevant time period. (JSF at 3 (citing Doc. 99-6 [Deposition of Plaintiff] at 6:8–14).) *Accord Strickland v. Seattle Cent. Coll.*, CASE NO. C18-1073JLR, 2019 WL 7370338, at *6 n.10 (W.D. Wash. Dec. 31, 2019) (finding that a "lack of timely performance reviews," among other things, did not amount to evidence of a hostile work environment or an adverse employment action). Plaintiff alleges that the lack of performance reviews hindered his ability to seek promotions (Doc. 85 ¶ 23), but as discussed above, this could not be the case because Plaintiff chose not to apply for management positions within Wal-Mart during the relevant time period.

Second, Plaintiff cannot show an adverse employment action on the basis of raises because he concedes that he received a raise every year during the relevant time period and no evidence in the record suggests that younger employees were treated more favorably. (JSF at 4; Doc. 99-6 [Deposition of Plaintiff] at 12:5–25; 20:2–6.) *Accord Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1212 n.4 (W.D. Wash. 2018) (finding that the plaintiff's complaint that "he was not given more than a 2% raise . . . fail[ed] to establish a prima facie case because [it was] not sufficiently adverse or because [the plaintiff] cannot establish that similarly situated individuals received more favorable treatment"). Therefore, Plaintiff cannot succeed on his discrimination claim under this theory either.

### c) Job Reassignment

Defendant argues that Plaintiff's reassignment to softline capping and relocation to the backroom do not constitute an adverse employment action because the material conditions of Plaintiff's employment—his pay, job title, and management team—did not change, and even if they did, the action was not "linked to his age." (Doc. 99-1 at 14–15, 19 (citation omitted).) Plaintiff argues that the reassignment was "very much as a punishment" because the location was isolated and people were only moved from hardline

15

capping to softline capping "maybe twice a year, if that." (Doc. 99-6 [Deposition of Plaintiff] at 22:4–15; 27:5–16.)

The Ninth Circuit defines adverse employment actions broadly, and even "a transfer to another job of the same pay and status may constitute an adverse employment action." *Henderson*, 217 F.3d at 1241. But the Court need not reach the issue of whether Plaintiff's reassignment constituted an adverse employment action because the claim fails at another element; there is no admissible evidence in the record that Plaintiff was reassigned "under circumstances that give rise to an inference of unlawful [age] discrimination[.] *Sandell*, 188 Cal. App. 4th at 321 (citation omitted).

The Court has very liberally construed the record in light of Plaintiff's *pro se* status, and considers evidence that, as discussed, could have properly been excluded as a result of Defendant's evidentiary objections. (*See supra* Section III.B.2 (considering as evidence the transcription of Plaintiff's handwritten notes as set forth in Docs. 86, 98, and 104, but not considering as evidence any unsupported contentions or allegations in Plaintiff's unverified pleadings).) Even under this liberal construction, the record contains no evidence of circumstances that give rise to an inference that Plaintiff was reassigned to softcapping because of unlawful age discrimination. Plaintiff has introduced no admissible statements that Defendant or its employees made about his age, nor has he introduced sufficient (or any) circumstantial evidence that his age played a role in Defendant's decision to reassign him to softline capping. *See, e.g.*, *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1208–1211 (9th Cir. 2008) (describing the "variety of circumstantial evidence" that may be considered at summary judgment). The mere fact that Plaintiff was over 40 years old and was given a different job task does not, even with all justifiable inferences drawn in his favor, create a triable issue of fact regarding this element.

Therefore, the Court finds that there is no evidence establishing a triable issue of material fact as to whether Plaintiff suffered age discrimination under FEHA. Accordingly, the Court **GRANTS** Defendant's MSJ as to Plaintiff's FEHA age discrimination claim.

3:23-cv-01368-RBM-DEB

## 2. Harassment Claim

Under FEHA, it is unlawful for an employer to harass an employee because of the employee's age. *Ortiz v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 568, 581 (2019) (citing Cal. Gov't Code § 12940(j)). To establish a *prima facie* case of harassment, a plaintiff must show that "(1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." *Id.* (citation omitted).

As discussed above, the Court finds that none of the alleged incidents of harassment detailed in Plaintiff's notes were based on Plaintiff's age. Because there is no evidence establishing a triable issue of material fact as to whether Plaintiff suffered harassment under FEHA, the Court **GRANTS** Defendant's MSJ as to this claim as well.

## 3. Retaliation Claim under California Government Code § 12940(h)

FEHA prohibits an employer from discharging, expelling, or otherwise discriminating "against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). To state a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action by Defendant; and (3) there is a causal link between the protected activity and Defendant's action. *Yanowitz*, 36 Cal. 4th at 1042. "Protected activity" means that Plaintiff "has opposed any practices forbidden under [FEHA] . . . or has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov't Code § 12940(h). "It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA." *Yanowitz*, 36 Cal. 4th at 1043.

17

Defendant argues that Plaintiff cannot establish a retaliation claim based on his taking of unprotected leave or his complaints to the CRD and Wal-Mart Ethics because his complaints made before March 12, 2021 are time-barred; he suffered no adverse employment actions; and no evidence shows a causal link between his complaints and Defendant's actions. (Doc. 99-1 at 16–21.) The Court agrees.

At the outset, Plaintiff's claims arising from events before March 12, 2021 are time barred. (*See* Doc. 7 (MTD Order); *supra* note 3.) The Court does not consider any of Plaintiff's allegations connected to his complaints to Wal-Mart Ethics from before that date. The Court turns to those actions within the relevant time period for which Plaintiff claims he was retaliated against: his complaint to the CRD on March 12, 2021; his taking of unprotected leave in October 2022; and his call to Wal-Mart Ethics on July 9, 2024.

### a)    Complaint to the CRD

Plaintiff has introduced no evidence that his complaint to the CRD on March 12, 2021 resulted in him suffering an adverse employment action, or that a causal link existed between any such action and Plaintiff's complaint to the CRD. The only claimed adverse actions relevant here are failure to promote, failure to provide performance reviews and raises, and adverse job assignments. (*See supra* note 8.) As it discussed above, the Court finds that the first two of these do not constitute adverse employment actions. (*See supra* Section III.C.1.a–b.) And even if the reassignment to softline capping were an adverse employment action, there is no evidence that the reassignment was causally linked to Plaintiff's complaint to the CRD. Thus, to state a *prima facie* case, Plaintiff must rely solely on temporal proximity between filing a complaint with the CRD on March 12, 2021 and being reassigned to softline capping around February 2023.

Although "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity," *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002), that inference is only "permitted if the adverse action follows 'within a relatively short time' after the protected activity." *Yphantides v. Cnty. of San Diego*, 660 F. Supp. 3d 935, 959 (S.D. Cal. 2023) (citation

omitted); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that, in Title VII retaliation cases, courts "uniformly hold that the temporal proximity must be 'very close,'" and that a four-month delay between the protected activity and adverse action is too long); *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1181 (C.D. Cal. 2013) (noting that "the Ninth Circuit has held that gaps of one to three months between a plaintiff's protected activity and a defendant's adverse employment action can give rise to an inference of causation"). Here, Plaintiff's reassignment occurred over a year after his complaint to the CRD. This is not a "relatively short time" by any standard. Because he lacks any other evidence that his reassignment was motivated by his complaint to the CRD, Plaintiff cannot show that the temporal proximity between his complaint and his reassignment creates a triable issue of fact as to retaliation.

### b) Taking Unprotected Leave

Plaintiff did not engage in a protected activity under FEHA when he took an unprotected leave of absence in October 2022. "Government Code § 12940(h) encompasses a broad range of protected activity." *Hawkins v. SimplexGrinnell L.P.*, Civil No. 12cv1406 L(BGS), 2014 WL 769345, at *9 (S.D. Cal. Feb. 25, 2014), *affirmed in part and reversed in part on other grounds by* 640 F. App'x 640 (9th Cir. 2016). It includes: activities that "have some element of express opposition to an action or policy or practice of the employer;" requesting accommodations; and taking a variety of protected leaves. *See Kelley v. Corrs. Corp. of Am.*, 750 F. Supp. 2d 1132, 1144 (E.D. Cal. 2010) (opposition to policy or practice); Cal. Assem. Bill. 987 (2015–2016 Reg. Sess.) (requesting accommodations); *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1005, 1019 (E.D. Cal. 2011) (taking leave under the Family Medical Leave Act and the California Family Rights Act is a protected activity); *Viramontes v. XPO Logistics Freight, Inc.*, Case No. CV 17-08642-RGK-AFMx, 2018 WL 6133646, at *2 (C.D. Cal. Jan. 24, 2018) (same for taking maternity leave); *Rivera v. Vishay Americas, Inc.*, Case No 5:20-cv-01719-ODW (SPx), 2021 WL 4749503, at *7 (C.D. Cal. Oct. 12, 2012) (same for taking disability leave).

3:23-cv-01368-RBM-DEB

Taking an unprotected leave, as Plaintiff concedes he did (Doc. 99-6 at 19:5–12),[10] does not fall into even that broad range of protected activities. *Accord Pratt v. Delta Air Lines, Inc.*, No. 2:14-cv-00815-CAS(JCx), 2015 WL 2153397, at *15 (C.D. Cal. May 4, 2015) (concluding that the plaintiff's absences from work did not constitute a protected activity because nothing "suggest[ed] that plaintiff's absences were a form of opposition or protest"). Thus, Plaintiff cannot state a *prima facie* case for retaliation under FEHA because his taking unprotected leave does not qualify as a protected activity.

### c) Call to Wal-Mart Ethics

Finally, even if the Court considers Plaintiff's alleged complaint to Wal-Mart Ethics on July 9, 2024, Plaintiff has introduced no evidence that this complaint resulted in him suffering an adverse employment action, or that a causal link existed between any such action and Plaintiff's complaint.

"[F]or a causal link to exist between the adverse employment action and the protected activity, the adverse employment action cannot predate the protected activity." *Doe No. 1 v. Wynn Resorts, Ltd.*, Case No. 2:19-cv-01904-GMN-VCF, 2023 WL 1782439, at *14 n.22 (D. Nev. Feb. 3, 2023) (citing *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 n.1 (9th Cir. 1986)). After July 9, 2024, the only potentially adverse actions of which Plaintiff could complain are, as discussed above, the minor or trivial type that are not actionable under FEHA. (*See supra* Section III.C.1.) And even if they were actionable,

---

[10] The Court notes that Plaintiff believes he "probably could have pursued [this leave] as being medical, but [he] chose to just take it as unpaid leave. And so [Defendant] can call it unprotected if they want to, but it probably could have been [protected]." (Doc. 99-6 [Deposition of Plaintiff] at 17:1–6.) Even drawing all justifiable inferences in Plaintiff's favor, this mere statement of dispute is not enough to create a triable issue of fact. Plaintiff must "go beyond the pleadings and by [his] own [evidence], designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see Bishop v. San Quentin State Prison Work Place*, No. C 01-3411 SI (PR), 2002 WL 1767416, at *4 (N.D. Cal. July 29, 2002) (finding that the *pro se* plaintiff had not met his burden to resist summary judgment because he presented "no other evidence (other than his mere say-so)").

Plaintiff has introduced no evidence to show that they were causally linked to Plaintiff's complaint.  Therefore, the Court finds that there is no evidence establishing a triable issue of material fact as to whether Plaintiff suffered retaliation under California Government Code § 12940(h).  Accordingly, the Court **GRANTS** Defendant's MSJ as to this claim.

### 4.      Retaliation Under California Labor Code § 1102.5

An employer may not retaliate "against an employee 'for disclosing information to a government or law enforcement agency' if the employee reasonably believes this information relates to a violation of state or federal statutes or regulations." *Ayala*, 263 F. Supp. 3d at 915 (quoting Cal. Lab. Code § 1102.5(b)).  To state a *prima facie* case under § 1102.5, "a plaintiff must show (1) she engaged in protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005) (citation omitted).

Defendant argues that "Plaintiff cannot point to anything that would allow him to establish a basis" that Defendant subjected Plaintiff to any adverse employment action following his complaint to the CRD.  (Doc. 99-1 at 22.)  The Court agrees.

The definition of an "adverse employment action" under § 1102.5 is the same as the one used in the FEHA analysis: whether the action "materially affects the compensation, terms, conditions, or privileges of . . . employment." *See Patten*, 134 Cal. App. 4th at 1387–88 (applying this definition to a § 1102.5 claim).  The Court has extensively analyzed this question above and concluded that Plaintiff cannot establish an adverse employment action or show that any potentially protected activity is causally linked to such an action. The Court thus similarly **GRANTS** Defendant's MSJ as to this claim.

### 5.      Failure to Prevent Discrimination, Harassment, or Retaliation Claim

"Under the FEHA, it is also prohibited for an employer 'to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring in the workplace.'" *Ayala*, 263 F. Supp. 3d at 905 (quoting Cal. Gov't Code § 12940(k)).  To state a *prima facie* case, Plaintiff must show that he was subjected to discrimination,

3:23-cv-01368-RBM-DEB

harassment, or retaliation that Defendant failed to take all reasonable steps to prevent and that caused Plaintiff harm. *Id.* (citing *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998)). Plaintiff cannot prevail on a claim for failure to prevent discrimination, harassment, or retaliation because, as discussed above, he has not experienced those things as defined under FEHA. *See Trujillo*, 63 Cal. App. 4th at 287–89. Accordingly, the Court **GRANTS** Defendant's MSJ as to this claim.

## IV.   CONCLUSION

Based on the foregoing, the Court:

1) **DENIES** Plaintiff's MSJ (Doc. 90);

2) **GRANTS** Defendant's MSJ (Doc. 99) as to all of Plaintiff's claims; and

3) **DENIES AS MOOT** Defendant's Motion to Dismiss (Doc. 87).

4) **ORDERS** the Clerk of Court to enter judgment in favor of Defendant as to all claims and terminate the case.

**IT IS SO ORDERED**.

DATE:  January 28, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

22

3:23-cv-01368-RBM-DEB